**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN WATERLOO DIVISION**

JAMES HAROLD SMITH,

              Petitioner,

vs.

JOHN AULT, Warden,
Iowa State Penitentiary,

              Respondent.

No. C 07-2070-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE'S REPORT AND
RECOMMENDATION ON PETITION
FOR WRIT OF HABEAS CORPUS**

———————————

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.*  *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *A.*  *Standards for a Magistrate Judge's Report and Recommendation* . . . . . 7
    *B.*  *General Standards for § 2254 Relief* . . . . . . . . . . . . . . . . . . . . . 12

*III.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*IV.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I.  INTRODUCTION

### A.  Procedural Background

On October 16, 2007, petitioner James Smith filed his *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody with this court. Doc. No. 1.  The petition has since been supplemented several times:  one supplement was filed on October 17, 2007 (Doc. No. 4); two supplements were filed on October 19, 2007 (Doc. Nos. 5 and 6); and one supplement was filed on November 2, 2007 (Doc. No. 9). On November 28, 2007, the court appointed counsel to represent Smith.  Doc. No. 13. Lowell Brandt, the respondent at that time[1], filed a response to Smith's petition on February 22, 2008.  Doc. No. 18.  Smith then filed his Brief in Support of Application for Habeas Corpus on July 3, 2008.  Doc. No. 27.  Respondent John Ault responded to the brief by filing his Merits Brief on July 11, 2008.  Doc. No. 28.  On July 24, 2008, the court referred the case to Chief United States Magistrate Judge Paul A. Zoss for a report and recommendation.  Judge Zoss filed his Report and Recommendation on Petition for Writ of Habeas Corpus on January 29, 2009, which recommends that Smith's petition for writ of habeas corpus be denied.  Doc. No. 32.

### B.  Factual Background

Judge Zoss made the following factual findings in his report and recommendation:

> On February 7, 2003, Smith was sentenced in Black Hawk County, Iowa, to a prison term for a third-offense OWI. The court ordered Smith to surrender himself to the Black

---

[1]  The respondent was Lowell Brandt, at the time the response was filed, as Smith had been at the Iowa Medical Classification Center in Oakdale, Iowa.  However, on February 22, 2008, John Ault was substituted as respondent due to Smith's relocation to the Iowa State Penitentiary in Fort Madison, Iowa.

Hawk County Sheriff immediately following the sentencing hearing to begin serving his term of imprisonment. The court then addressed Smith's counsel, stating, "Mr. Fiester, I'll ask that you surrender your client to the Black Hawk County Sheriff and inform the sheriff that the order will be coming forthwith." Mr. Fiester responded, "We'll walk over." *State v Smith*, 690 N.W.2d 75, 76 (Iowa 2004) (*Smith I*).

Smith and his attorney left the courtroom, and Smith made several phone calls from a pay phone in the courthouse. After a few minutes, Mr. Fiester realized he was scheduled to be in court on another matter. He asked a court attendant to call a deputy sheriff to escort Smith to the jail, and then he left for his other hearing. "Once alone, Smith fled the courthouse and did not return." *Id*. On February 14, 2003, a warrant was issued for Smith's arrest, and a contempt action was initiated against him based on his failure to surrender himself into custody as ordered. Smith was arrested on the warrant on February 23, 2003. On March 3, 2003, Smith was charged with escape, in violation of Iowa Code section 719.4(1).[2] On March 14, 2003, Smith entered a plea of not guilty to the escape charge. On June 4, 2003, the trial information was amended to charge Smith as an habitual offender on the basis of his prior felony convictions.

On May 13, 2003, following a hearing, the court found Smith in contempt for failing to surrender himself and begin his sentence as ordered. He was sentenced to time served of seventy-nine days on the contempt, and the court ordered that

---

[2] "A person convicted of a felony or charged with or arrested for the commission of a felony, who intentionally escapes, or attempts to escape, from a detention facility, community-based correctional facility, or institution to which the person has been committed by reason of the conviction, charge, or arrest, or from the custody of any public officer, public employee, or any other person to whom the person has been entrusted, commits a class "D" felony." Iowa Code § 719.4(1).

3

the seventy-nine days would not be credited to Smith's sentence on the OWI charges.

Smith's case on the escape charge was tried to the court on June 25, 2003. At trial, Smith's attorney argued Smith's prosecution on the escape charge constituted double jeopardy because Smith already had been found guilty of contempt for the escape, and he had served a seventy-nine-day sentence on the charge. The trial court found Smith had waived the double jeopardy issue by failing to raise the argument in a pretrial motion. The trial court nevertheless went ahead and addressed Smith's double jeopardy argument on the merits, holding as follows:

[E]ven if the defendant had raised this issue in a procedurally appropriate manner, the court finds and concludes that defendant's prosecution for Escape following the contempt proceedings is not barred by double jeopardy.

In determining whether the defendant faces a successive prosecution for the same offense, the court must consider the elements of the offenses charged. The essence of a double jeopardy claim is successive prosecution or punishment for the same offense. For the defendant to be adjudged guilty of contempt, the defendant must have willfully disobeyed a court order. The defendant must have had knowledge of the court's order, and proceeded to willfully disobey the terms of that order. The elements of Escape are much different. . . . Contempt is not a lesser include[d] offense of Escape. *See, e.g.*, State v. Beecher, 616 N.W.2d 532 (Iowa 2000) and State v. Sharkey, 574 N.W.2d 6 (Iowa 1997). Contempt charges do not bar successive prosecutions for other criminal offenses so long as the contempt is not a lesser included offense of the prosecuted criminal charge.

Further, it appears that the Iowa Legislature has contemplated the situation presented in this case. [Iowa Code] Section 811.2(8) provides that a person who fails to appear for court

4

after having been released on bond may be prosecuted for felony failure to appear without limiting the power of the court to punish for contempt. Perhaps the Legislature envisioned the situation presented in this case. The Legislature clearly did not intend to usurp or limit the court's own authority to ensure compliance with court's orders. The Legislature likely also recognized the fact that courts often initiate contempt proceedings without consultation with the state. It would be inappropriate to prohibit a felony prosecution simply because a court acted on its own to see that its own order was carried out.

The court concludes that defendant's double jeopardy claim must fail procedurally and substantively.

*State v. Smith*, No. FECR112525, Order dated Sept. 24, 2003, at 4-5; Doc. No. 28-2, pp.6-7.[3]

Smith appealed his conviction on the escape charge, but he did not renew his double jeopardy argument. Instead he argued "the evidence was insufficient to support a finding of escape under section 719.4(1), and the sentencing court in the OWI offense abused its discretion by requesting the defendant's attorney to escort the defendant to the sheriff's office." *Smith I*, 690 N.W.2d at 76; *see* Doc. No. 27 at 4. The Iowa Supreme Court rejected both arguments and affirmed Smith's conviction. *Id.*

Smith filed an application for postconviction relief, reasserting the two grounds for relief he had raised in his direct appeal, and also reasserting his argument that his conviction on the escape charge constituted double jeopardy.[4]

---

[3] Page references are to the court's ECF system pagination.

[4] Although referenced in both parties' briefs, *see* Doc. No. 27 at 4-5 *and* Doc.

(continued…)

The postconviction court followed reasoning identical to that of the trial court in rejecting Smith's double jeopardy claim. *See* Doc. No. 28-2, pp. 3-5. The POST-CONVICTION RELIEF court explained the elements of the two offenses – contempt and escape – as follows:

The United States Supreme Court has determined that the elements of contempt are "knowledge of the court's order coupled with a deliberate violation." <u>U.S. v. Dickson</u> [sic], 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). The elements of the offense of escape are: (1) the defendant is a person convicted of a felony; (2) who intentionally escapes; and (3) from the custody of any public officer or employee to whom the person has been entrusted. <u>State v. Wagner</u>, 596 N.W.2d 83 (Iowa 1999).

*Id.*, p. 16 ¶ 6. The postconviction trial court denied the application on January 10, 2006.

Smith appealed the denial of postconviction relief. His postconviction appellate attorney moved to withdraw on the basis that he could find no non-frivolous issues to present on appeal. *See* Iowa R. App. P. 6.104; *see also Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 13 L. Ed. 2d 493 (1967).[5] Smith did not file a response to his attorney's motion

<hr />

[4](…continued)
No. 28 at 10-11, Smith's application for postconviction relief does not appear in the record. *See* Doc. No. 22, Respondent's Supplemental Submission of State Court Documents, ¶ 3, "PCR Action," under which appears the notation "[none as yet]." Because the court does not have the actual application for postconviction relief, it is unclear whether Smith raised the double jeopardy argument on its own, or in the context of an ineffective assistance of counsel claim.

[5] *Anders* stands for the proposition that when counsel finds a defendant's case "to be wholly frivolous, after a conscientious examination of it, [counsel] should so advise the
(continued…)

> to withdraw, and on April 17, 2007, the Iowa Supreme Court
> granted the motion and dismissed Smith's appeal as frivolous.
> *See* Doc. No. 28-2, p. 19.

Doc. No. 32. The court has not received any objections to Judge Zoss's factual findings and adopts them in full.

## II. LEGAL STANDARDS

### A. Standards for a Magistrate Judge's Report and Recommendation

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and

---

[5](...continued)

court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." 386 U.S. at 744, 87 S. Ct. at 1400. The defendant may respond, and then if the court, on its own review of the record, agrees the case is wholly frivolous, the court may grant the motion to withdraw and dismiss the case. If, on the other hand, the court finds any of the claims not to be frivolous, then the court must provide the assistance of counsel to argue the case. *Id.*

recommendation).  While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time.  *Id.*  If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate."  *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter.  *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review").  The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'"  *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))).  Thus, while de novo review generally involves

review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[6]

_____

[6] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain

(continued...)

## B. General Standards for § 2254 Relief

Section 2254 of Title 28, including § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, govern Smith's petition. Section 2254(a) states that:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution . . . of the United States.

---

[6](...continued)

error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

28 U.S.C. § 2254(a). In this case, Smith's claim is governed by Section 2254(d)(1). The United States Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1-2)). An "unreasonable application" of federal law by a state court can occur in two ways: (1) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) where "the state court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407. It is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable. *Id*. at 411; *see Bell v. Cone*, 535 U.S. 685, 694 (2002) ("an unreasonable application is different from an incorrect one."). Stated differently, a federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent. *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

The pre-AEDPA de novo standard of review is applied, however, to mixed questions of law and fact when the claim was not adjudicated on the merits in state court.

*Robinson v. Crist*, 278 F.3d 862, 865 (8th Cir. 2002) (citing *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001)); *see Clemons v. Luebbers*, 381 F. 3d 744, 757 (8th Cir. 2004). In other words, a petitioner will only be entitled to the pre-AEDPA de novo standard of review if the petitioner "has fairly presented his federal constitutional claims to the state court[,]" *see Frey*, 151 F.3d at 897 (citations omitted), and yet the state court did not adjudicate the claim on its merits. *See Robinson*, 278 F.3d at 865.

A petitioner must satisfy certain procedural requirements, however, in order to preserve issues or claims for federal review. As the Eighth Circuit Court of Appeals has explained previously:

> Before a federal court may reach the merits of a claim in a habeas petition by a state prisoner, it "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *See Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*per curium*); *McCall v. Benson*, 114 F.3d 754, 757 (9th Cir. 1997). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall*, 114 F.3d at 757 (internal quotations omitted).

*Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998); *see Sweet v. Delo*, 125 F.3d 1144, 1153 (8th Cir. 1997) ("Raising a state-law claim in state court that is merely similar to the constitutional claim later pressed in a habeas action is insufficient to preserve the latter for federal review.") (citing *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (*en banc*); *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (holding that general appeal to broad concept such as due process is insufficient presentation of the issue to state court)). The state can waive the exhaustion requirement, but "shall not be deemed to have waived the

exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(2).

Regardless of whether a state prisoner has fulfilled the exhaustion requirement, the court may reach the merits of the claim so long as the court denies the application. *See* 28 U.S.C. § 2254(b)(2). Section 2255(b)(2) explains that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Eighth Circuit Court of Appeals has recognized that § 2254(b)(2) sometimes allows a court to "deny an unexhausted claim on the merits." *Gingras v. Weber*, 543 F.3d 1001, 1003 (8th Cir. 2008). In a dissenting opinion, Justice Samuel Alito, joined by three other justices, had occasion to discuss the rationale for applying § 2254(b)(2)—the majority and concurring opinions did not discuss § 2254(b)(2)—and provided the following regarding its application:

> Among other things, the court may believe that the merits question is easier, and the court may think that the parties and the public are more likely to be satisfied that justice has been done if the decision is based on the merits instead of what may be viewed as a legal technicality.

*Smith v. Texas*, 127 S.Ct. 1686, 1703 (2007)(Alito, J. dissenting).


## III. ANALYSIS

Neither Smith nor Ault have filed objections to Judge Zoss's report and recommendation. As a result, the court reviews Judge Zoss's findings under a clearly erroneous standard of review. *See Grinder*, 73 F.3d at 795. However, Smith's claim is governed by § 2254(d)(1), which also provides a standard of review for the state court determinations at issue—the court must find that the state court "unreasonably" applied the

facts of Smith's case to the governing legal rule. *See Williams*, 529 U.S. at 407. Therefore, the court will consider whether Judge Zoss's determinations are clearly erroneous, while keeping in mind the substantial deference paid to state court determinations under § 2254(d).

Judge Zoss, in his report and recommendation, recommends that Smith's writ of habeas corpus be denied. Smith had asked Judge Zoss to evaluate whether his right to effective assistance of counsel was violated by: 1) his trial counsel's failure to timely raise a double jeopardy claim and 2) by his appellate counsel's failure to assert a claim of ineffective assistance of counsel related to the double jeopardy claim. The court questions whether either of these claims has been properly preserved under § 2254—Judge Zoss found that Smith would not prevail on the merits of his claims, regardless of whether his petition had procedural defects. Since Judge Zoss's report and recommendation recommends that Smith's writ of habeas corpus be denied, the parties have filed no objections to the report and recommendation, and "[a]n application for a writ of habeas corpus may be *denied on the merits*, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," *see* 28 U.S.C § 2254(b)(2) (emphasis added), the court now turns to an evaluation of the merits of Smith's claims.

The United States Supreme Court "established the legal principles that govern claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). The Court has explained *Strickland's* holding in the following terms:

> An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of

reasonableness." We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

*Id.* (citing *Strickland*, 466 U.S. at 687-8) (internal citations omitted). In *Strickland*, the Court also explained that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) (citing *Strickland*, 466 U.S. at 697).

In order to determine whether Smith was prejudiced by either of his counsels' failure to timely allege his double jeopardy claim, the court evaluates the merits of any such double jeopardy claim. The Fifth Amendment to the United States Constitution provides, in part, that no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend V. "Under this clause, a defendant is protected from both successive prosecutions and multiple punishments for the same criminal offense." *U.S. v. Honken*, 541 F.3d 1146, 1154 (8th Cir. 2008) (citations omitted). In *Dixon*, the United States Supreme Court explained that:

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. *See, e.g., Brown v. Ohio*, 432 U.S. 161, 168-169, 97 S.Ct. 2221, 2226-2227, 53 L.Ed.2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (multiple punishment); *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911) (successive prosecutions). The same-elements test, sometimes referred to as the " *Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not,

> they are the "same offence" and double jeopardy bars
> additional punishment and successive prosecution.

*Dixon*, 509 U.S. at 696. The court also explained that, "[i]t is well established that criminal contempt, at least the sort enforced through nonsummary proceedings, is 'a crime in the ordinary sense.'" *Id.* (citations omitted); *see also State v. Sharkey*, 574 N.W.2d 6 (Iowa 1997) (the Iowa Supreme Court applied *Blockburger* test to a criminal contempt charge).

In this case, the court applies the same-elements test to the two crimes for which Smith was sentenced. First, Smith was sentenced for contempt. The elements of contempt, relating to violation of a court order, are the following: 1) a court order; and 2) willful violation of the court order. *Ervin v. Iowa Dist. Court for Webster County*, 495 N.W.2d 742, 745 (Iowa 1993) ("[w]here . . . violation of a court order is shown... the question turns on willfulness"). The United States Supreme Court has explained, however, that "the 'crime' of violating a condition of release cannot be abstracted from the 'element' of the violated condition." *Dixon*, 509 U.S. at 698. Similarly, if a court order incorporates a substantive criminal offense, "the underlying substantive criminal offense is 'a species of lesser-included offense' in relation to the court order." *Id.*

The state court order did not incorporate a substantive criminal offense from the Iowa Code. Instead, the court ordered Smith to report to the Black Hawk County Sheriff and, once there, to inform the sheriff that the court would be sending the order related to Smith's detention. As a result, for Smith to be held in contempt for violating this particular court order, the court would need to find: 1) that there was a court order requiring Smith to report to the sheriff; and 2) Smith willfully failed to report to the sheriff.

18

Smith was also sentenced for the crime of escape under Iowa Code § 719.4(1). The elements of escape under section 1 are the following: 1) the defendant had been convicted, charged, or arrested for a felony; 2) he intentionally escaped or attempted to escape; and 3) the escape was "from the custody of any public officer, public employee, or any other person to whom the person has been entrusted. . . ." IOWA CODE § 719.4(1).

With the above elements of the contempt and escape offenses in mind, the court first evaluates whether all of the elements of escape are contained within the elements of the contempt offense—whether escape is a lesser included offense. First, Smith must be found to be either a convicted felon or charged with a felony to be found guilty under Iowa Code § 719.4(1). However, in order to be found in contempt of court, it was not required that he be a felon. Second, Smith had to intentionally escape or attempt to escape in order to be found guilty under Iowa Code § 719.4(1). Again, the state court could have found Smith in contempt without making a finding that he escaped. Third, Smith had to escape from the custody of a "public officer, public employee, or any other person to whom [he] ha[d] been entrusted[]" to violate the escape statute. IOWA CODE § 719.4(1). Here, the actual escape was not what was prohibited by court order, rather, the court required Smith to take the affirmative action of reporting to the sheriff. Escape requires proof of elements not required to find contempt, and therefore escape is not a lesser included offense in relation to the contempt offense.

The court must also evaluate whether contempt involves elements that the escape statute does not require to be met—whether contempt is a lesser included offense. Smith's sentence for contempt stemmed from a court order requiring Smith to report to the sheriff. However, and as alluded to above, the escape statute does not prohibit an individual's failure to report. Instead, the statute prohibits escaping from custody. Smith could have been held in contempt without violating the escape statute, by refusing to report to the

sheriff without escaping from the custody of his attorney or the sheriff. Alternatively, Smith could have violated all of the elements of escape but not be found in contempt if the state court had found that he did not have knowledge of the court's order and, as a result, did not willfully disobey it. The court, having applied the same elements test, finds that the double jeopardy bar does not apply in the case at bar.

The court, finding Smith's sentence for violating Iowa Code § 719.4(1)—which was imposed subsequent to his sentence for contempt—does not violate the Double Jeopardy Clause, concludes that Smith was not prejudiced by his counsels' failure to raise a double jeopardy claim. Therefore, Smith is not in custody in violation of his Sixth Amendment right to effective assistance of counsel, and the court denies Smith's writ for habeas corpus on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The court finds that, even applying the pre-AEDPA de novo standard of review, Smith's petition should be denied. Judge Zoss's report and recommendation, having found that Smith's writ of habeas corpus should be denied on the same grounds, is not clearly erroneous.

## IV. CONCLUSION

THEREFORE, the court accepts Judge Zoss's Report and Recommendation on Petition for Writ of Habeas Corpus (Doc. No. 32) and denies Smith's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. No. 1.

**IT IS SO ORDERED.**

**DATED** this 13th day of April, 2009.

Mark W. Bennett

_____

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA